# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TEAMSTERS LOCAL UNION NO. 776,** | : | |
| Plaintiff | : | No. 1:24-cv-02133 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **UNITED PARCEL SERVICE,** | : | |
| Defendant | : | |

## MEMORANDUM

In this action arising under the Labor Management Relations Act ("LMRA"), Plaintiff Teamsters Local Union No. 776 ("Plaintiff" or "the Union") alleges that Defendant United Parcel Service ("Defendant" or "UPS") has refused to comply with an arbitration award. Both parties have moved for summary judgment. For the following reasons, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment.[1]

## I. BACKGROUND

### A. Procedural Background

On December 11, 2024, the Union filed a complaint alleging that UPS "fail[ed] to comply with the Central Pennsylvania Area Parcel Grievance Committee's [arbitration award]"

---

[1] The parties each, in their motions for summary judgment, move for attorney's fees and costs. See (Doc. No. 19 at 22); (Doc. No. 14 at 2). "Under the American rule, each party normally must bear the burden of its own legal expenses, including attorneys' fees. One of the narrow exceptions to this rule is a finding that the losing party litigated in bad faith, vexatiously, or for oppressive reasons." Mobil Oil Corp. v. Indep. Oil Workers Union, 679 F.2d 299, 305 (3d Cir. 1982). Neither party supports their request with citations to case law, and the Court does not find that a narrow exception to the general rule applies here. See Kane Gas Light & Heating Co. v. Int'l Bhd. of Firemen & Oilers, Loc. 112, 687 F.2d 673, 683 (3d Cir. 1982) (affirming the district court's denial of attorney's fees where it "found that 'no factors have been called to our attention justifying a fee award because the plaintiff's actions were in bad faith, vexatious, wanton or oppressive,'" and noting "that the fact that the Company challenged the arbitrator's award on the merits is not by itself sufficient to justify a grant of attorney's fees to the party seeking enforcement of the award" (internal citations omitted)).

compensating a UPS employee who had been terminated and then reinstated, allegedly in violation of the collective bargaining agreement between the parties, as well as the LMRA. (Doc. No. 1.) Defendant filed its answer on February 14, 2025. (Doc. No. 7.) The parties filed a case management plan on April 11, 2025, in which they jointly submitted that "discovery is unnecessary for the purpose of resolving this action." (Doc. No. 11 at 5.) The Court then held a case management conference with the parties on April 16, 2025 (Doc. No. 12), after which it set a briefing schedule requiring that motions for summary judgment be filed on or before June 30, 2025 (Doc. No. 13).

On June 30, 2025, Plaintiff filed a motion for summary judgment (Doc. No. 14) with a supporting brief (Doc. No. 15), exhibits (Doc. No. 16), and statement of undisputed material facts (Doc. No. 17). On July 1, 2025, Defendant filed its motion for summary judgment (Doc. No. 18) with its supporting brief (Doc. No. 19), exhibits (Doc. Nos. 18-4–18-6), and statement of undisputed material facts (Doc. No. 18-3).[2]

---

[2] On July 25, 2025, Defendant filed a motion for extension of time to move for summary judgment, explaining that it had encountered "technical difficulties," which resulted in Defendant submitting its motion at "12:11a.m. on July 1, 2025, 11 minutes after the [June 30, 2025] deadline." (Doc. No. 24 at 2.) On August 1, 2025, Plaintiff filed its opposition to Defendant's motion for extension of time (Doc. No. 25), to which Defendant filed its reply on August 15, 2025 (Doc. No. 28). Under Rule 6(b) of the Federal Rules of Civil Procedure, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." See Fed. R. Civ. P. 6(b). Defendant argues that there is good cause to excuse the "11-minute delay [because it] did not result in any prejudice to Plaintiff and did not have any impact whatsoever on the progress of this judicial proceeding." (Doc. No. 24 at 3.) In its opposition, Plaintiff argues that Defendant did not demonstrate excusable neglect because it "did not act in good faith" by waiting "more than 20 days" to file its motion for extension of time, and further that the reasons for the delay were "completely within the reasonable control of UPS." (Doc. No. 25 at 2.) Plaintiff does not cite any authority in support of its argument. Plaintiff's argument is easily dispensed with, and Defendant adequately demonstrates good cause for the minor delay. See Cuff v. Dep't of Corr., No. 23-3246, 2025 WL 1442706, at *3 (3d Cir. May 20, 2025) (affirming a district court ruling permitting a party to file a "summary judgment motion more than five months after its scheduling order deadline," where the opposing party

On July 21, 2025, Defendant filed its brief in opposition to Plaintiff's motion for summary judgment (Doc. No. 20) and its answer to Plaintiff's statement of undisputed material facts (Doc. No. 20-1), and that same day Plaintiff filed its brief in opposition to Defendant's motion for summary judgment (Doc. No. 23), accompanying exhibits (Doc. No. 21), and its answer to Defendant's statement of undisputed material facts (Doc. No. 22). The parties' cross motions are now ripe for disposition.

**B.     Factual Background**[3]

**1.     Material Facts up to the Panel's Issuance of the Award**

The Union and UPS are parties to a collective bargaining agreement ("CBA"). (Doc. Nos. 18-3 ¶ 1, 17 ¶ 3.) Maria Calderon, a UPS employee and bargaining unit member of the Union, was terminated from her employment with UPS on February 9, 2024. (Doc. No. 17 ¶ 9.) On February 16, 2024, the Union filed a grievance asserting that she was unjustly discharged, and the grievance was brought before the Central Pennsylvania Area Parcel Grievance Committee ("Panel"), which is comprised of representatives from UPS and local unions. (Doc. Nos. 18 ¶ 4, 20-1 at 3.) The Panel is authorized, under the CBA, to hear grievances and to "order full, partial, or no compensation for time lost by a grievant whose discharge or suspension the

---

"has not made the 'clearest showing that the procedures have resulted in actual and substantial prejudice,' which we normally require before setting aside a decision of case management") (citing In re Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982)). For the foregoing reasons, the Court will grant Defendant's motion for an extension of time to file its motion for summary judgment.

[3] The following relevant facts of record are taken from Plaintiff's statement of undisputed material facts (Doc. No. 17), Defendant's statement of undisputed material facts (Doc. No. 18-3), Defendant's response to Plaintiff's statement of undisputed material facts (Doc. No. 20-1), and Plaintiff's response to Defendant's statement of undisputed material facts (Doc. No. 22). Each filing contains specific citations to the record at each numbered paragraph. The facts are undisputed unless otherwise noted.

[Panel] or arbitrator deems unjust." (Doc. No. 18-3 ¶¶ 5, 6) (internal citations omitted). Decisions of the Panel are final and binding. (Id. ¶ 7.) The Panel held a hearing on the grievance on June 14, 2024. (Id. ¶ 14.) After review, the Panel overturned Ms. Calderon's discharge and awarded her partial backpay. (Id. ¶ 19.) The Panel issued its written ruling approximately one week after the hearing. (Id. ¶ 20.) The Panel's award stated:

> [t]he discharge is reduced to a 5 day suspension. The grievant will be paid 25 days of pay at her daily guarantee. The grievant is reminded from the panel that she must follow the instructions of her supervisors.

(Id. ¶ 21; Doc. No. 17 ¶ 16.) Following the Panel's decision, UPS reinstated Ms. Calderon. (Doc. No. 18-3 ¶ 23.)

The parties agree that Ms. Calderon's "daily guarantee," as of June 14, 2024, was 3.5 hours per day. (Doc. Nos. 17 ¶ 17, 20-1 at 8.) However, they dispute the actual monetary value of the award. Plaintiff asserts that "the total remedy from the Panel is $2,340.63." (Doc. No. 17 ¶ 17.) Defendant disputes this interpretation: "[t]he Union's backpay calculation is contrary to the Parties' discussions regarding the award during the six months preceding this litigation, the backpay award of the [] Panel in connection with Ms. Calderon's second discharge grievance, and contrary to the practice of the parties to the CBA." (Doc. No. 20-1 at 8.)

### 2. Material Facts after the Panel's Issuance of the Award

Defendant, in its statement of undisputed material facts (Doc. No. 18-3), cites to a number of events that occurred after the Panel had issued its award. Plaintiff largely does not dispute these factual assertions, but instead objects that post-award facts are irrelevant and inadmissible: "[p]ursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, the Union objects to [these statements] on the grounds that events that took place after the Arbitration Award are not relevant, and therefore not admissible for Summary Judgment raised by UPS."

4

(Doc. No. 22 ¶¶ 28–33, 37–40, 42–56.)

Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." See Fed. R. Evid. 401. "Rule 401 does not raise a high standard." Hurley v. Atl. City Police Dep't, 174 F.3d 95, 109–10 (3d Cir. 1999); see also Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir. 1994) (holding that "evidence is irrelevant only when it has no tendency to prove the fact," and explaining that "the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant").

Upon consideration of the foregoing, the Court will overrule Plaintiff's objections and admit the post-award facts for purposes of the instant summary judgment motions. The Court finds that the post-award facts are relevant to Plaintiff's claim—whether UPS "has refused to comply with the Panel's award." (Doc. No. 15 at 3.) The Court's determination of UPS's compliance or non-compliance with the award necessarily relies upon an assessment of its actions and of events that took place after the issuance of the award. Plaintiff's argument that "events that took place after the Arbitration Award are not relevant" is therefore unavailing. See generally (Doc. No. 22). Moreover, these facts are relevant to the dispute regarding the parties' interpretation of the award, and may bear upon whether the award was ambiguous. In addition to the foregoing, Plaintiff cites to no authority and makes no argument in its brief in support of its evidentiary objections, and conclusory evidentiary objections are insufficient. See Williams v. Pennsylvania State Univ., 697 F. Supp. 3d 297, 312–13 (M.D. Pa. 2023), aff'd, No. 23-3180, 2025 WL 971670 (3d Cir. Apr. 1, 2025) (finding that a party's "bare citations to the Rules of Evidence and conclusory statements—i.e. that portions of the [statement of material facts] are

5

hearsay, confuse the issues, or were made without personal knowledge,—are insufficient to raise legitimate objections") (internal citations omitted). Because Plaintiff's objections as to relevance fail, and because Plaintiff does not controvert the material facts, the Court will deem them admitted as set forth below. See Fireman's Ins. Co. of Newark, N. J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (finding that once "the moving party has supplied sufficient affidavits in support of its motion, the opposing party must respond by supplementing the record in some manner—whether by its own affidavits or otherwise—setting forth specific facts demonstrating that there is a genuinely disputed factual issue for trial"); see also Local Rule 56.1 (stating that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party").

After the issuance of the award, UPS asked the Union "to verify whether Ms. Calderon had received unemployment benefits after her discharge during the period for which she was awarded backpay." (Doc. No. 18-3 ¶ 27.)[4] The purpose of this request was "to determine the amount of any offset from backpay." (Id. ¶ 28.) In response, on July 11, 2024, the Union "confirmed for UPS that Ms. Calderon had collected unemployment benefits in connection with her discharge." (Id. ¶ 29.) The Union "never objected to providing UPS with documentation of Ms. Calderon's unemployment benefits for the purpose of computing backpay at any time between the [] Panel ruling and the filing of the Complaint in this action" on December 11,

---

[4] The language of Plaintiff's objection to this paragraph is slightly different from its objections to the other post-award facts, but the Court finds that, for the same reasons articulated above, the facts set forth in paragraph 27 are deemed admitted. See (Doc. No. 22 ¶ 27) ("Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, the Union objects to this statement on the grounds that other backpay awards are not relevant, and therefore not admissible for Summary Judgment raised by UPS").

2024.[5]  (Id. ¶¶ 30, 33.)

In January 2025, "UPS suggested the Parties seek clarification of the backpay award from the Joint Panel Chairmen who rendered the June 14, 2024 decision" (id. ¶ 35), to which the "Union did not object or otherwise respond" (id. ¶ 36).[6]  On January 29, 2025, "UPS discharged Ms. Calderon [once more], and the Union filed a grievance challenging the discharge."  (Id. ¶ 37.)  Having "failed to resolve Ms. Calderon's second discharge grievance among themselves" (id. ¶ 38), the "Union docketed the second discharge grievance" and it was "set for a hearing before a joint panel and Arbitrator Jaffe on March 26, 2025" (id. ¶ 39).  "At the outset of the [] proceeding on March 26, 2025, UPS requested that the joint panel and arbitrator review the June 14, 2024 decision reinstating Ms. Calderon and clarify the backpay award."  (Id. ¶ 40.)  During the proceeding, the parties "explained their dispute regarding whether backpay was subject to offset for unemployment benefits" (id. ¶ 43), after which the "Panel Chairmen and Arbitrator

---

[5] In addition to its standard objection, Plaintiff adds that, regarding Paragraph 33, "the Union has always taken the position that the Award must be interpreted consistent with its express terms."  (Doc. No. 22 ¶ 33.)  However, Plaintiff does not cite to any record evidence in support of this statement, and the Court will deem the facts set forth in this paragraph admitted.  See Local Rule 56.1 (requiring that "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.  All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party").

[6] Plaintiff denies paragraph 35 ("[t]he Union did not agree that UPS was entitled to an offset for unemployment compensation, nor did the Union agree to go before the Panel for clarification" (Doc. No. 22 ¶ 35)) and paragraph 36 ("[t]he Union did not agree to seek clarification from the CPAPGC Panel nor did the Union ever agree to place the 2024 Calderon award on the Docket for clarification" (id. ¶ 36)).  However, these so-called denials do not actually dispute the facts asserted therein.  Because the Union fails to raise genuine disputes as to paragraphs 35 and 36, the facts set forth in these paragraphs will be deemed admitted.  See Rau v. Allstate Fire & Cas. Ins. Co., 793 F. App'x 84, 86-87 (3d Cir. 2019) (unpublished) (finding that the district court properly deemed the moving party's facts admitted where the opposing party filed a statement of facts in which it denied averments by the moving party, "but then wrote answers that did not actually reject the paragraphs it responded to").

7

Jaffe [] reviewed the June 14, 2024 decision privately in an executive session" (id. ¶ 44) and then "confirmed for the Parties that the June 14, 2024 decision awarding backpay in connection with Ms. Calderon's reinstatement contemplated an offset of any unemployment benefits Ms. Calderon had received during the period for which backpay was awarded" (id. ¶ 45). The Panel "confirmed that Ms. Calderon was required to provide UPS with documentation of her unemployment benefits in order for UPS to determine backpay" (id. ¶ 46), and Ms. Calderon was ordered "to provide UPS with complete documentation of her unemployment benefits within ten (10) days of the March 26, 2025 proceeding" (id. ¶ 47). The specific language of the decision, read on the record, was as follows:

> [t]he panel ruled and clarified that in case 24-24, Maria Calderon, heard in June of 2024 that the intent of the parties, as it's always been, is that any financial offset during the period of time she was back paid, meaning unemployment wages she had earned, would need to be provided to [UPS] prior to the payment being made, and that would be deducted from that backpay award. . . . And [UPS] will make payment when she provides the documentation within 10 days as stated in the contract.

(Doc. No. 18-5 at 38.)[7] "On April 1, 2025, the Union provided UPS with complete documentation of the unemployment compensation benefits Ms. Calderon received during the period she was out of work because of her January 29, 2025 discharge." (Doc. No. 18-3 ¶ 56.)

As to payment of the award, the parties do not dispute that UPS sent some amount to Ms. Calderon, only whether that amount was sufficient. UPS asserts that on April 10, 2025, "UPS remitted payment to Ms. Calderon for the backpay awarded in the June 14, 2024 and March 26, 2025 decisions" of the Panel (id. ¶ 57), and in calculating the amount, it "utilized the same method to determine the amount of backpay owed to Ms. Calderon in connection with each

---

[7] The Court cites directly to the record in this instance because, although Defendant references the decision in its statement of undisputed material facts (Doc. No. 18-3 ¶¶ 45–47), it does not quote the decision.

8

[Panel] decision, namely, by calculating Ms. Calderon's lost wages based on her hourly rate and daily guarantee and deducting unemployment compensation based on Ms. Calderon's weekly benefits for the relevant period" (id. ¶ 58). The Union denies paragraph 57 insofar as, in its view, "UPS did not remit payment to Ms. Calderon based on the plain meaning of the Arbitration Award for the 2024 award," and admits paragraph 58 "only to the extent that UPS calculated Ms. Calderon's backpay based on its own interpretation" of the award. (Doc. No. 22 ¶¶ 57, 58.) The Union does not dispute but does object to UPS's statement that the "method UPS used to determine the amount of backpay owed to Ms. Calderon was consistent with the March 26, 2025 [award]."[8] (Doc. No. 18-3 ¶ 59.) The Union asserts that, instead, the "total remedy from the Panel is $2,340.63." (Doc. No. 17 ¶ 17.)

## II.    LEGAL STANDARDS

### A.    Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient

---

[8] The language of Plaintiff's objection to this paragraph is slightly different from its objections to the other post-award facts, but the Court finds that, for the same reasons articulated above, the facts set forth in this paragraph will be deemed admitted. See (Doc. No. 22 ¶ 59) ("Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, the Union objects to this statement on the grounds that the March 26, 2025[] Arbitration Award is not relevant, and therefore not admissible for Summary Judgment raised by UPS").

9

disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. See id. at 251–52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." See A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." See Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. See Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. See Anderson, 477 U.S. at 249–50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. See id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Furthermore, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. See Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

The summary judgment standard remains the same when addressing cross-motions for summary judgment. See Transguard Ins. Co. of Am., Inc. v. Hinchey, 464 F. Supp. 2d 425, 430

(M.D. Pa. 2006) (citing Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987)). "When confronted with cross-motions for summary judgment, the court must rule on each party's motion on an individual and separate basis, determining for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Castlepoint Nat. Ins. Co. v. Ins. Co. of Pennsylvania, No. 14-cv-00792, 2015 WL 2339092, at *3 (M.D. Pa. May 13, 2015) (internal citations omitted). "If review of cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving the judgment in light of the law and undisputed facts." Transguard, 464 F. Supp. 2d at 430 (citing Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998)).

### B. Standard for Review of an Arbitration Award

Section 301 of the Labor Management Relations Act ("LMRA") governs "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . ., or between any such labor organizations." See 29 U.S.C. § 185(a); see also Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71, 502 U.S. 93, 98 (1991) (holding that "a suit properly brought under § 301 [of the LMRA] must be a suit either for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce or for violation of a contract between such labor organizations"). "Section 301 [of the LMRA] governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (citing Elec. Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987) and Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985)).

It is settled law that "the courts play only a limited role when asked to review the

decision of an arbitrator." See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987). In such disputes, "the question of interpretation of the collective bargaining agreement is a question for the arbitrator." See United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 599 (1960). "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." Id. Thus:

> the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

See Misco, 484 U.S. at 38.

Generally, "once an arbitration panel renders a decision regarding the issues submitted, the panel becomes functus officio and lacks any power to reexamine that decision." See Colonial Penn Ins. Co. v. Omaha Indem. Co., 943 F.2d 327, 331 (3d Cir. 1991). However, the United States Court of Appeals for the Third Circuit recognizes three exceptions to the functus officio doctrine:

(1) an arbitrator can correct a mistake which is apparent on the face of his award;

(2) where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination; and

(3) [w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify.

See id. at 332 (cleaned up) (quoting La Vale Plaza, Inc. v. R. S. Noonan, Inc., 378 F.2d 569, 573

12

(3d Cir. 1967)).  The third exception provides that "when the remedy awarded by the arbitrators is ambiguous, a remand for clarification of the intended meaning of an arbitration award is appropriate."  See Colonial Penn, 943 F.2d at 334.  "Such a remand avoids the court's misinterpretation of the award and is therefore more likely to give the parties the award for which they bargained."  Id.

Where an arbitrator has clarified their award, "[u]nflagging deference to arbitrators' 'clarifications' would effectively give them the power to revisit the merits of prior decisions, thus completely eliminating the functus officio doctrine."  See Verizon Pennsylvania, LLC v. Commc'ns Workers of Am., AFL-CIO, Loc. 13000, 13 F.4th 300, 309 (3d Cir. 2021).  Therefore, when "an arbitrator has actually decided an issue but the ruling is ambiguous, we defer to the arbitrator's post hoc interpretation of his award only if it is a rational clarification of the ambiguity; otherwise, the arbitrator is revising the award, not clarifying it."  See id.

### III. DISCUSSION

Both parties agree that the Panel's award here draws its essence from the collective bargaining agreement and is enforceable.  See (Doc. No. 15 at 5) (Plaintiff states that the "arbitration award draws its essence from the collective bargaining agreement"); (Doc. No. 20 at 13) (Defendant states that "[t]here is no question the [] Panel award draws its essence from the CBA"); see also Misco, 484 U.S. at 38 (stating that "the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice").  However, Defendant argues that, because this is not a suit to vacate or modify the award, the "inquiry is irrelevant here," because "[w]hether an arbitration award draws its essence from a collective bargaining agreement is primarily relevant to the Court's authority to disturb the award."  (Doc.

13

No. 20 at 9.) Regardless, the Court agrees with both parties and finds that the award here drew its essence from the collective bargaining agreement. The Panel has the authority, under the parties' collective bargaining agreement, to hear grievances and to "order full, partial, or no compensation for time lost by a grievant whose discharge or suspension the [Panel] or arbitrator deems unjust." (Doc. No. 18-3 ¶¶ 5, 6) (internal citations omitted). Decisions of the Panel are final and binding. (Id. ¶ 7.) As such, the award—overturning Ms. Calderon's discharge and awarding partial backpay (id. ¶ 19)—is in a "rational way derived from the collective bargaining agreement." See Pennsylvania Power Co. v. Loc. Union No. 272, Int'l Bhd. of Elec. Workers, AFL-CIO, 276 F.3d 174, 178 (3d Cir. 2001).

Although the parties agree that the Panel's award is valid and enforceable, they dispute whether the award was ambiguous and disagree as to its meaning. As cited above, the Panel's award to Ms. Calderon stated as follows:

> The discharge is reduced to a 5 day suspension. The grievant will be paid 25 days of pay at her daily guarantee. The grievant is reminded from the panel that she must follow the instructions of her supervisors.

(Doc. Nos. 18-3 ¶ 21, 17 ¶ 16.) Plaintiff argues that there is "no ambiguity in the [a]ward," and that "this is not a situation where the parties are unable to calculate the damages owed based on the language of the arbitration award." (Doc. No. 15 at 13.) Plaintiff states, "[t]he award directed the Employer to pay Ms. Calderon 25 days of pay at her daily guarantee. [] Under Article 50 of the CBA, a part-time employee, such as Ms. Calderon, is guaranteed 3.5 hours a workday." (Doc. No. 15 at 14.) Plaintiff argues that, given the award's lack of ambiguity, there is no genuine issue of material fact that Defendant "has refused to comply with the Panel's award." (Id. at 3.)

Defendant counters that:

> [t]he undisputed record clearly establishes UPS did not fail to comply with the backpay award. The fact that UPS reasonably believed the backpay award required offset and endeavored to satisfy the award based on such interpretation is undisputed and dispositive, and the Court should grant the Company's Motion on that basis. The Court cannot find that UPS failed to comply with the backpay award absent a clear directive from the CPAPGC. The record in this matter is devoid of evidence that UPS violated any such directive.

(Doc. No. 27 at 3.) Moreover, Defendant argues that the "absence of language regarding offset is not dispositive," and the Panel's decision "fails to address other key components of backpay too, such as the relevant timeframe, the grievant's regular work period, and the grievant's rate of pay." (Id. at 3–4.) Defendant adds that:

> [i]f the Parties agreed on the amount of the backpay award, this dispute would not be before the Court. The Union contends the grievant was owed $2,340.63, whereas UPS maintains it satisfied the award by remitting payment to the grievant in the amount of $15.625. [] The Joint Panel decision fails to resolve this disagreement on its face. The award is therefore ambiguous.

(Id. at 4.)

As noted supra, ordinarily, "once an arbitration panel renders a decision regarding the issues submitted, it becomes functus officio and lacks any power to reexamine that decision." See Colonial Penn, 943 F.2d at 331. Plaintiff argues that here "the Panel was functus officio after issuing the June 14, 2024 [award]." (Doc. No. 23 at 13.) Defendant counters that the "functus officio rule does not bar remand in cases where, as here, the Parties only differ as to the remedy awarded." (Doc. No. 20 at 14.) Defendants quote Local 825 of International Union of Operating Engineers v. Tuckahoe Sand & Gravel, No. 06-cv-04784, 2007 WL 1797657, at *9 (D.N.J. June 20, 2007) for the proposition that, "where back pay or other benefits are the subject of an initial award, and a dispute arises as to the nature or amount of the initial award, the normal course of action is to treat the award as ambiguous and remand the dispute to the original arbitrator to clarify the award." The district court in Tuckahoe found that the situation at issue

15

fell "into the third exception to the functus officio doctrine; it clarified ambiguities in the initial Opinion and Award, and therefore did not exceed the scope of the arbitrator's authority." See id.

For the following reasons, the Court finds that the initial arbitration award is ambiguous and that the Panel's clarification meets the third exception to the functus officio doctrine. The text of the award—prescribing "25 days of pay at her daily guarantee" (Doc. No. 16-4 at 2)—is not sufficiently clear as to leave the Court without doubt. See United Mine Workers of Am. Dist. No. 5 v. Consolidation Coal Co., 666 F.2d 806, 811 (3d Cir. 1981) (finding that "[i]f the court has any doubt, the parties should be returned to their grievance procedure and arbitration, for it is an arbitrator, and not the court, who is to decide whether the same issue has already been resolved in an earlier proceeding"); see also SEIU Healthcare Pennsylvania, CTW, CLC v. Reg'l Hosp. of Scranton, 106 F. Supp. 3d 523, 547 (M.D. Pa. 2015) (finding remand necessary and quoting Tuckahoe).[9] The text of the award does not specify a dollar figure. To determine the value of the award, then, the Court would need to look to extrinsic evidence. Both parties, in fact, steer the Court to elements beyond the text of the award to guide their interpretations. Plaintiff points to the parties' understanding of the meaning of the term "daily guarantee," as well as to Ms. Calderon's pay rate. (Doc. No. 15 at 14.) Defendant points to the parties' practice of offsetting arbitration awards based on any unemployment compensation received, as well as

---

[9] Plaintiff argues that an "alleged ambiguity does not provide grounds for a remand when the employer does not present mitigating evidence to the arbitrator," citing International Union of Bricklayers & Allied Craftworkers, Local 5 v. Inter-State Tile & Mantel Co., No. 1:07-cv-01150, 2010 WL 2034693 (M.D. Pa. Mar. 18, 2010), report and recommendation adopted, 2010 WL 2034695 (M.D. Pa. May 18, 2010). (Doc. No. 15 at 19.) However, in that case, the court found that "remand would, in effect, call upon us to generally re-open this arbitration decision under the guise of assessing the amount of the company's contribution and would invite the arbitrator to reexamine the merits of this decision three years after it was entered on grounds that were not timely presented." See Inter-State Tile, 2010 WL 2034693, at *12. The Court finds the situation at issue in Inter-State Tile materially different from the facts at hand.

the parties' understandings and actions in the wake of the instant award's issuance.  (Doc. No. 19 at 6–13.)  Although the Court could endeavor to interpret the award based upon these competing renderings, the law is clear that the parties are owed the arbitrator's, not the Court's, interpretation.  See United Steelworkers, 363 U.S. at 599 ("[i]t is the arbitrator's construction which was bargained for").  In such a case, the answer is to remand, not to guess.  See Dist. 1199C v. Genesis Healthcare, No. 08-cv-01791, 2008 WL 5116899, at *3 (D.N.J. Dec. 2, 2008) (remanding the matter to the arbitrator to clarify the award, noting that "[i]t is possible that the arbitrator intended one of the methods of calculation proposed by the parties.  It is also possible that upon remand, the arbitrator would explain that he intended another method of calculation"); Pennsylvania Nurses Ass'n, Loc. 729, OPEIU/AFL-CIO v. John F. Kennedy Med. Ctr., 247 F. Supp. 2d 665, 675 (E.D. Pa. 2003) (finding remand appropriate because "the Court cannot conclude with positive assurance that the Award was intended to cover this category of nurses") (internal quotations omitted).  Because of the Court's limited role in arbitration matters, and given the conflicting evidence, the Court deems the initial award ambiguous.

Because the award is ambiguous, the third exception to the functus officio doctrine applies.  See Colonial Penn, 943 F.2d at 334 (noting that the third exception provides that "when the remedy awarded by the arbitrators is ambiguous, a remand for clarification of the intended meaning of an arbitration award is appropriate").  Ordinarily the proper recourse would be to remand for clarification, but that clarification was already sought and provided here.  In January 2025, "UPS suggested the Parties seek clarification of the backpay award from the Joint Panel Chairmen who rendered the June 14, 2024 decision" (id. ¶ 35) to which the "Union did not object or otherwise respond" (id. ¶ 36).  On January 29, 2025, "UPS discharged Ms. Calderon [a second time], and the Union filed a grievance challenging the discharge."  (Doc. No. 18-3 ¶ 37.)

17

This second discharge grievance was "set for a hearing before a joint panel and Arbitrator Jaffe on March 26, 2025." (Id. ¶ 39.) During the proceeding, the parties "explained their dispute regarding whether backpay was subject to offset for unemployment benefits" (id. ¶ 43), after which the "Panel Chairmen and Arbitrator Jaffe [] reviewed the June 14, 2024 decision privately in an executive session" (id. ¶ 44) and then "confirmed for the Parties that the June 14, 2024 decision awarding backpay in connection with Ms. Calderon's reinstatement contemplated an offset of any unemployment benefits Ms. Calderon had received during the period for which backpay was awarded" (id. ¶ 45). The Panel "confirmed that Ms. Calderon was required to provide UPS with documentation of her unemployment benefits in order for UPS to determine backpay" (id. ¶ 46), and Ms. Calderon was ordered "to provide UPS with complete documentation of her unemployment benefits within ten (10) days of the March 26, 2025 proceeding" (id. ¶ 47). The specific language of the clarification, read on the record, was:

> [t]he panel ruled and clarified that in case 24-24, Maria Calderon, heard in June of 2024 that the intent of the parties, as it's always been, is that any financial offset during the period of time she was back paid, meaning unemployment wages she had earned, would need to be provided to [UPS] prior to the payment being made, and that would be deducted from that backpay award. . . . And [UPS] will make payment when she provides the documentation within 10 days as stated in the contract.

(Doc. No. 18-5 at 38.)

Where an arbitrator has clarified their award, "[u]nflagging deference to arbitrators' 'clarifications' would effectively give them the power to revisit the merits of prior decisions, thus completely eliminating the functus officio doctrine." See Verizon, 13 F.4th at 309. Therefore, when "an arbitrator has actually decided an issue but the ruling is ambiguous, we defer to the arbitrator's post hoc interpretation of his award only if it is a rational clarification of the ambiguity; otherwise, the arbitrator is revising the award, not clarifying it." See id.

18

Here, the arbitrator rationally clarified the ambiguity in the arbitration award. The clarification, which articulated the method of calculating the backpay with more specificity, is squarely within the scope of the original award and does not revisit its merits. See Prospect Cap. Mgmt. L.P. v. Stratera Holdings, LLC, No. 22-mc-00089, 2024 WL 4678392, at *2 (D. Del. Nov. 5, 2024) (finding that the arbitrator rationally clarified the ambiguity in the award and distinguishing the facts as "wholly dissimilar from Verizon, where it was 'obvious' that the arbitrators had revised an earlier decision when their later decision permitted recovery for a particular issue despite having previously 'explicitly stated' in the earlier decision that recovery should be denied because that issue was already 'settled'"); see also San Antonio Newspaper Guild Loc. No. 25 v. San Antonio Light Div., 481 F.2d 821, 825 (5th Cir. 1973) (finding that "[t]he normal course of action in such cases, then, is for the court to remand the matter to the original arbitrator for clarification. To do so in this case, however, would be a pointless gesture. There has already been a clarification of Arbitrator Florey's award"). Because this clarification does not attempt to modify the substance or alter the ruling as to the merits of the controversy, the clarification stands. See La Vale Plaza, 378 F.2d at 573 (permitting the arbitrator to clarify an ambiguous award to "remove the cloud of doubt," in a way that would "in no way reopen the merits of the controversy"). This clarification had the same effect as a remand—to "avoid[] the court's misinterpretation of the award," and therefore to "give the parties the award for which they bargained." See Colonial Penn, 943 F.2d at 334.

In assessing cross-motions for summary judgment, if the Court's review "reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving the judgment in light of the law and undisputed facts." See Transguard Ins. Co. of Am., Inc., 464 F. Supp. 2d at 430 (citing Iberia Foods, 150 F.3d at 302). Even viewing the facts in the light most

19

favorable to Plaintiff, there is no genuine issue of material fact. UPS did not refuse to comply with the Panel's award. Instead, it interpreted the award to be offset by any unemployment compensation that Ms. Calderon may have received, it made efforts to obtain the documentation to determine the amount it owed her, and it sought clarification from the Panel to confirm whether it had properly interpreted the award. The Panel confirmed UPS's understanding. Defendant is therefore entitled to judgment as a matter of law. Accordingly, the Court will grant Defendant's motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant summary judgment in favor of Defendant and deny Plaintiff's motion for summary judgment. Further, the Court will grant Defendant's motion for an extension of time to file its motion for summary judgment, and will deny both parties' requests for attorney's fees. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania